IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
JOHN SUTTON, GAIL SUTTON and            No C 06-0472 VRW
DANIELLE SUTTON,

          Plaintiffs,
                                        ORDER
     v

KATHLEEN LLEWELLYN, Individually
and DBA HAWLEY AND LLEWELLYN,
LLC; ALBERT NICORA, Individually
and DBA NICORA AND MINOR, LLC;
JAVAID SHEIKH; LISA GALDOS,
Individually and in her official
capacity as Court Executive
Officer,

          Defendants.
                                   /
```

On July 20, 2006, defendant Javaid Sheikh, MD filed a motion to dismiss all claims against him for failure to state a claim upon which relief can be granted under FRCP 12(b)(6). Doc #34. On August 10, 2006, plaintiffs filed a motion to strike the declaration submitted in support of Sheikh's motion to dismiss. Doc #40.

On August 28, 2006, plaintiffs filed a motion for leave to file a motion for reconsideration of the court's August 11, 2006 order (Doc #33). Docs #44, 45, 52.

On September 14, 2006 defendant Albert Nicora filed a motion for judgment on the pleadings under FRCP 12(c). Doc #53. Nicora's motion is not yet submitted for the court's consideration.

The court has reviewed memoranda from both sides on Sheikh's motion to dismiss and plaintiffs' motion to strike and has considered plaintiffs' motion for leave to file motion for reconsideration and finds them appropriate for decision on the papers without oral argument. For the reasons stated herein, plaintiffs' motion to strike is DENIED, Sheikh's motion to dismiss is GRANTED with leave to amend plaintiffs' medical malpractice and defamation claims. Plaintiffs' motion for leave to file a motion for reconsideration is DENIED.

I

The instant action is one of three cases filed in this court that arise from the conservatorship proceedings opened in 2003 in Monterey county concerning the late Letitia Breng Rose. See CAND No C-04-4176 (Rose v Hogan); CAND No C-05-4469 (Sutton v Teets). Plaintiffs John, Gail and Danielle Sutton are Rose's son-in-law, daughter and granddaughter respectively. Doc #1 ¶ 2.

On January 24, 2006, plaintiffs, acting in propria persona, brought this action on behalf of themselves and the estate of Rose against Kathleen Llewellyn, individually and DBA Hawley and Llewellyn, LLC; Albert Nicora, individually and DBA Nicora and Minor, LLC; Javaid Sheikh; and Lisa Galdos, individually and in her official capacity as Court Executive Officer. Doc #1 ¶ 1-6.

On August 11, 2006, the court granted Llewellyn and Galdos's separate motions to dismiss without leave to amend, Doc

#7, Doc #15; denied plaintiffs' motion for entry of default judgment against Sheikh and Nicora, Doc #18, Doc #25; and denied plaintiffs' motion for injunctive relief against Galdos.  Doc #33.

        The court ruled, moreover, that plaintiffs could not bring claims on behalf of Rose's estate.  Doc #42.  First, as pro per litigants, plaintiffs lack authority to represent anyone other than themselves.  Doc #42 at 4.  Second, plaintiffs cannot sue on behalf of Rose's estate since they are "not executors" or personal representatives of the estate.  Id.  Finally, as the New York federal district court previously ruled that plaintiffs lacked standing to sue and this court has indicated no inclination to change that ruling, plaintiffs are barred from relitigating the issue here under the principle of collateral estoppel.  Id.

## II

        While plaintiffs do not allege federal claims against Sheikh as they have against other defendants, this court may exercise subject matter jurisdiction over the state tort actions plaintiffs purport to assert against Sheikh.

        Under 28 USC § 1367(a), supplemental jurisdiction is proper where the relationship between the federal and state law claims is such that they form "part of the same case or controversy under Article III of the United States Constitution."  Plaintiffs have purported to allege a federal constitutional claim against Nicora, the only other remaining defendant, for deprivation of plaintiffs' and Rose's fundamental right to due process.  Doc #1 ¶ 88-94.  These allegations and the state law claims against Sheikh arise out of the conservatorship proceedings concerning Rose.

Hence, the claims involve a "common nucleus of operative fact" and would be expected to be resolved in a single judicial proceeding. <u>United Mine Workers of America v Gibbs</u>, 383 US 715, 725 (1966).

A federal court exercising supplemental jurisdiction over state law claims must apply the law of the forum state. <u>Mangold v California Public Utilities Com'n</u>, 67 F3d 1470, 1478 (9th Cir 1995). Each of plaintiffs' purported claims against Sheikh arise under state law. Accordingly, California state law applies.

### III

The court turns first to plaintiffs' motion to strike the Sheikh declaration. Doc #40. Plaintiffs argue that the court should disregard Sheikh's medical report because he failed to attach the report to his motion to dismiss, which he did —— inadvertently —— but later submitted it with a supplemental declaration by Sheikh's counsel (Doc # 52). Defendants, however, assert that it is proper to consider the report under the incorporation by reference doctrine. Doc #51 at 2. For the reasons stated herein, the court finds it proper to incorporate Sheikh's report by reference. Accordingly, plaintiffs' motion to strike is **DENIED**.

When considering a motion to dismiss, the court may take into account, not only plaintiffs' complaint, but also documents incorporated by reference. Where a document is "alleged in a complaint * * *, but [is] not physically attached to the pleading," it is incorporated by reference. <u>Branch v Tunnell</u>, 14 F3d 449, 454 (9th Cir 1996) (overruled on other grounds). The "incorporation by reference" doctrine applies where (1) plaintiffs' claim depends on

4

the contents of the document, (2) defendant attaches the document to its motion to dismiss and (3) the parties do not dispute the document's authenticity." Knievel v ESPN, 393 F 3d 1068, 1076 (9th Cir 2005).

Incorporation of Sheikh's November 2004 report by reference is appropriate here. First, plaintiffs' complaint refers directly to Sheikh's report. Doc #1 ¶¶ 24, 97 and 113. Second, plaintiffs' claims necessarily depend on the contents since, as far as the court is aware, it is the only basis of any of plaintiffs' claims against Sheikh. Third, while Sheikh inadvertently failed to attach the report to his motion, he corrected the mistake when he served the report on all parties and filed a copy with the court on August 31, 2006. Doc #47. Moreover, plaintiffs not only admit they received a redacted copy of the report in February 2005, but plaintiffs provided a copy to the court with their August 10th motion and admit that they submitted the report to the court as an exhibit in their earlier action, Sutton v Teets, CAND No C-05-4469. Doc #41. Finally, neither party has challenged the authenticity of the report. Accordingly, what follows is drawn from plaintiffs' complaint as well as Sheikh's November 2004 report, which is incorporated into plaintiffs' complaint by reference.

IV

On January 23, 2004, the Monterey county superior court appointed Llewellyn as counsel to Rose in her conservatorship proceeding. Doc #1 at 4-6. Galdos served as the Court Executive Officer for the superior court during this time. Id at 4. On April 30, 2004, the superior court granted Llewellyn's request to

withdraw as counsel and appointed Nicora as her replacement.  Id at 4, 8.  Nicora later retained Sheikh, a Professor of Psychiatry and Behavioral Sciences at Stanford University, to evaluate Rose's cognitive status and behavior, treatment regimen and care environment.  Doc #1 ¶ 23; Doc #47 Ex A.  On November 20, 2004, Sheikh visited Rose at her residence, the Victorian Carmel by the Sea, to conduct his evaluation.  Doc #47 Ex A.  On November 26, 2004, Sheikh issued a report containing his findings.  Id.

In Sheikh's evaluation of Rose's "current cognitive status and behavior," he performed four tests.  Doc #47 Ex A.  The "Mini Mental State Examination of Folstein" demonstrated "serious dementia," the "Global Deterioration Scale" showed "severe dementia," and the "CERAD Word List Memory Task" indicated "serious memory difficulties."  Id.  Lastly, the "Instrumental Activities of Daily Living Scale" reflected Rose's "complete dependence on her caregivers for all aspects of her basic needs * * *."  Id.

Sheikh also reviewed Rose's "current treatment regimen," which included doses of Aricept, Nemanda, Olanzapine/Zyprexa and Celexa, and opined that it was "quite appropriate for her diagnosis."  Doc #47 Ex A.  Finally, Sheikh evaluated Rose's "environment of care."  Sheikh found the Victorian to be a "beautiful facility" with a "clean" "home-like environment" and a "friendly, knowledgeable and concerned" staff.  Id.

In his "summary of findings and recommendations," Sheikh found that Rose appeared to be receiving "appropriate management of her condition pharmacologically, behaviorally, and environmentally," and that "[Rose] seem[ed] quite attached to her caregivers and appeared to be quite comfortable * * *."  Doc #47 Ex A.  Sheikh

6

1 found "no medical reason to change [Rose's] regimen or her stay at
2 the Victorian * * *."  Id.
3         In the final section of the report, Sheikh wrote "[y]ou
4 have also raised the issue of complex family dynamics, particularly
5 in regards to [] Rose's relationship with her daughter * * *."  Doc
6 #47 Ex A.  Sheikh stated that he was "not in the best position to
7 make a definitive recommendation regarding that issue," but after
8 reviewing materials provided by Nicora's office and interviewing
9 Rose's caregivers, found it "peculiar [] that [Rose's] daughter has
10 apparently not visited her in several years despite the
11 deterioration of her medical condition.  * * * Ms Rose's
12 conservator's invitations to the daughter to visit her mother (with
13 free airline ticket and free lodging during her stay) have
14 apparently not been accepted.  If correct, this appears at the very
15 least highly unusual behavior on the part of a daughter who
16 purportedly is concerned about Ms Rose's care."  Id.  Sheikh
17 concluded that he would not "recommend making any changes in []
18 Rose's care * * * unless presented with strong rationale otherwise
19 * * *."  Id.  Subsequently, Rose passed away and plaintiffs
20 initiated the instant case.  Doc #1 p 7.

V

23         In regards to Sheikh, plaintiffs demand damages for
24 several claims detailed herein.  Doc #1 p 15-16, 18.
25         Plaintiffs first allege medical malpractice.  Doc #1 ¶
26 95-100.  Plaintiffs claim that despite warnings from the drug's
27 manufacturer, "Sheikh prescribed [Z]yprexa for * * * Rose," and
28 that Sheikh "ignored [Rose's] depress[ion]."  Id at 96-97.

**7**

Plaintiffs further allege fraud, conspiracy and "breach of duty."  Doc #1 ¶ 101-104.  Plaintiffs claim "Sheikh conspired with the county of Monterey and [] Nicora to defraud [] Rose * * *," and "breached his ethical duty [to] the VA."  Id at ¶102, 103.

Plaintiffs next allege defamation.  Doc #1 ¶ 112-117.  Plaintiffs claim that "Sheikh defamed [p]laintiffs when he said that [] Rose preferred her foreign, alien workers to her family[,] and that the [Victorian] was better for [Rose] than her own family."  Id at ¶ 113.

Finally, plaintiffs allege intentional infliction of emotional distress.  Doc #1 ¶ 118-119.  Plaintiffs claim that "[Sheikh] caused[,] and continue[s] to cause intense infliction of [e]motional [d]istress by [his] actions and omissions."  Id at ¶ 119.

Sheikh moves for dismissal on grounds that (1) plaintiffs failed to plead the essential elements of their claims and (2) Sheikh enjoys privileged immunity from tort liability.  Doc #34.  "An action should not be dismissed for failure to state a claim under FRCP 12(b)(6) unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Russell v Landrieu, 621 F2d 1037, 1039 (9th Cir 1980) (citing Conley v Gibson, 355 US 41, 45 (1957)).  In considering such a motion, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  Wyler Summit Partnership v Turner Broadcasting System, Inc, 135 F3d 658, 661 (9th Cir 1998) (citing Parks School of Business, Inc v Symington, 51 F3d 1480, 1484 (9th Cir 1995)).

## VI

### A

Before addressing the merits of Sheikh's motion, the court will address three preliminary issues: Sheikh's election to file a motion under FRCP 12(b)(6), the timeliness of Sheikh's response to the complaint and standing.

#### 1

Plaintiffs assert Sheikh's motion was not filed with the court's permission. Doc #38. Under FRCP 12(b), a defendant may, <u>at his option</u>, respond to a complaint via motion. This includes a motion to dismiss for failure to state a claim upon which relief can be granted. FRCP 12(b)(6). FRCP 12(b) does not require a defendant to seek the court's permission to respond to a complaint via a Rule 12(b)(6) motion.

#### 2

Although the court has filed Sheikh's responsive pleading, plaintiffs persist in asserting that the response was untimely. Doc #38. FRCP 12(a)(1) requires a defendant answer within twenty days of service, but provides no automatic consequence for failing to do so. Plaintiffs perfected service upon Sheikh on May 12, 2006, see Doc #19, and filed their motion for default judgment on June 12, 2006. Doc #18. Sheikh filed this motion to dismiss immediately after plaintiffs filed their motion for default judgment. Doc #34. The court, in its August 11, 2006 order, denied plaintiffs' motion for entry of a default judgment because (1) they had failed to obtain a clerk's entry of default as required by Rule 55(a) and (2) the filing of the instant motion to dismiss rendered their motion for default moot. Doc #42 at 10.

To the extent plaintiffs wish the court to reconsider the issue of timeliness, it declines to do so. Parties must be able to rely on the court's judgments and because default judgments are generally disfavored, Pena v Seguros La Comercial, 770 F2d 811, 814 (9th Cir 1985), a response, even if filed late, must be accepted:

> Defendant's default (failure to respond) by itself, has no legal consequence. Until the default is entered by the court clerk, defendant can still appear in the action. If no default has been entered, the clerk must accept for filing defendant's pleadings or motions although they are filed late. Once they are filed, it is too late for entry of default, and defendant can proceed with its defense.

William W Schwarzer, A Wallace Tashima, and James M Wagstaffe, California Practice Guide Federal Civil Procedure Before Trial 6:3 (The Rutter Group 2006) (internal quotations omited).

### 3

As the court reiterated in its August 11th order, plaintiffs lack standing to sue. Doc #42. This applies with as much force to plaintiffs' claims against Sheikh. To the extent that plaintiffs' complaint seems to allege injury to plaintiffs themselves, however, the court addresses each such claim herein.

### B

Turning to plaintiffs' "breach of duty" claim, Doc #1 ¶ 100-04, plaintiffs allege that Sheikh "breached his ethical duty to the VA which is for veterans only by * * * defaming Suttons," and that as a result "Suttons suffered and continue to suffer." Id.

As a preliminary matter, while "breach of duty" is an important element in the recognized tort of negligence, an _ethical_ breach will not give rise to liability. Breach of a _legal_ duty

10

1 must be alleged.  Moreover, plaintiffs do not allege that Sheikh
2 breached any duty to <u>them</u>.  Rather, plaintiffs state that Sheikh
3 breached his duty to the Veterans' Administration.  These
4 allegations do not suggest an actionable theory of liability.
5 Accordingly, plaintiffs' purported claim for breach of duty is
6 DISMISSED without leave to amend.

C

Plaintiffs also seek to recover based upon a purported claim of medical malpractice.  Doc #1 ¶ 95-98.  In order to plead a cause of action for medical malpractice (i e professional negligence), plaintiff must allege that "defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff."  <u>Ann M v Pacific Plaza Shopping Center</u>, 6 Cal 4th 666, 673 (1993).  "An action for the professional negligence of a physician arises out of the breach of the duty of care owed to the patient by the physician <u>within</u> the scope of the patient-physician relationship."  <u>Atienza v Taub</u>, 194 Cal App 3d 388, 392 (1987) (emphasis in original).  Accordingly, for a claim to survive a motion to dismiss, it is imperative that plaintiff allege a patient-physician relationship.

Here, plaintiffs fail to allege that Rose and Sheikh had a patient-physician relationship.  Plaintiffs' allegation that "Sheikh prescribed [Z]yprexa," Doc #1 ¶ 96, is insufficient to support such a relationship and therefore insufficient to support a claim for medical malpractice.  If plaintiffs can allege, however, that Sheikh and Rose did have a patient-physician relationship and

11

1 that plaintiffs have standing to sue, their medical malpractice
2 claim could survive Sheikh's motion to dismiss. Accordingly, the
3 court gives plaintiffs 30 days from the date of this order to amend
4 their complaint within the context of Federal Rule of Civil
5 Procedure 11.

6 Under FRCP 11, when an unrepresented party files a
7 complaint, he certifies to the court that:

> [To] the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, * * * the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

13 FRCP 11(b)(3).  If the court determines plaintiffs have failed to
14 comply with Rule 11(b)(3), it may, on its own motion, impose
15 appropriate sanctions.  FRCP 11(c)(1)(B).

D

18 Plaintiffs' defamation claim is subject to dismissal on
19 two grounds:  (1) Sheikh is protected from liability under
20 California law and (2) his statements are not defamatory.

21 Based on the facts alleged in plaintiffs' complaint,
22 Sheikh cannot be held liable for statements made in his report
23 under California's "common interest privilege."  California Civil
24 Code § 47(c)(3) provides in pertinent part:

> A privileged publication * * * is one made in a communication, without malice, to a person interested therein, [by one] who is requested by the person interested to give the information.

28 \\

Cal Civ Code § 47(c)(3).  As long as the statement's publisher did not act with malice, California's "common interest privilege" protects the publisher from tort liability in defamation cases. <u>Coastal Abstract Service, Inc v First American Title Insurance Co</u>, 173 F3d 725, 735 (9th Cir 1999).  Plaintiffs allege in their complaint that Sheikh defamed them when he said "Rose preferred her foreign[] workers to her family[,] and that the [Victorian] was better for her than her own family," Doc #1 ¶ 113.  Plaintiffs, however, fail to specify when, where and in what context the alleged statements were made.

While nothing of the kind appears in Sheikh's report, it appears likely that the alleged statements are plaintiffs' interpretation of parts of the report, not separate statements. Plaintiffs' complaint alleges that Nicora hired Sheikh and "paid him, * * * in advance of [his] November visit,"  Doc #1 ¶ 23, and that "Sheikh commented on the beauty of the facility," Doc #1 ¶ 97. Sheikh's report, dated November 26, 2004 is addressed to Nicora. Doc #47 Ex A.  The report referred to the Victorian as a "beautiful facility," stated that Rose was "attached to her caregivers," and recommends that no changes be made in Rose's care.  Id.  Given the similarity between plaintiffs' allegations and the report, the most logical explanation is that plaintiffs' complaint refers to the statements in Sheikh's November 2004 report.

The statements in this report clearly fall within the ambit of § 47(c)(3) in that the report was made (1) upon request, (2) to an interested person and (3) without malice.  Nicora, the court-appointed attorney in Rose's conservatorship proceeding ordered Sheikh's report.  As Rose's representative, Nicora, was an

13

interested party attempting to obtain an accurate evaluation of her cognitive status and behavior, treatment regimen and care environment.  Further, plaintiffs have not alleged that Sheikh acted with malice.  Because Nicora, an interested party, ordered the report and plaintiffs failed to plead facts constituting malice, all of the statements contained in Sheikh's November 2004 report are privileged under § 47(c)(3).  Moreover, even assuming that Sheikh's report is not privileged, the statements are not the type of obloquy constituting defamation.  The statements plainly constitute Sheikh's professional opinion regarding Rose's condition and care.

Accordingly, the alleged statements, as they currently appear in plaintiffs' complaint and Sheikh's report, cannot support a claim for defamation.  Nevertheless, as plaintiffs have not clearly set forth that Sheikh's alleged defamatory statements were solely within the report's contents, plaintiffs shall have thirty days from the date of this order to amend their complaint.  In order for an amended complaint to survive any subsequent motion to dismiss, plaintiffs must, within the constraints of FRCP 11 (see supra), allege defamatory statements made outside the context of Sheikh's privileged report.

E

Plaintiffs' allegations fail to state a claim for intentional infliction of emotional distress (IIED).  As detailed in the court's August 11, 2006 order, the minimum allegations to support such a claim are: (1) "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard

14

of the probability of causing, emotional distress;" (2) "severe or extreme" emotional distress suffered by plaintiff and (3) causation.  <u>Christensen v Superior Court</u>, 54 Cal 3d 868, 903 (1992) (internal quotations omitted).  In order to be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Id.

Further, "[i]t is not enough that the conduct be intentional and outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  <u>Christensen</u>, 54 Cal 3d at 905.  "The only exception to this rule is [where] the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff."  Id.  "Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs * * * justifies recovery * * *."  Id at 906.

Plaintiffs do not allege that Sheikh intentionally directed his actions toward plaintiffs so as to cause them emotional distress.  Nor do plaintiffs allege that Sheikh acted with reckless disregard in their presence to cause such distress.  Further, Sheikh's report appears strikingly non-malicious and has an overall tone of professional concern and objectivity.  The idea that this report could form the basis of an IIED claim is far-fetched.  As plaintiffs have not pled, and cannot plead, a claim for IIED, the claim is DISMISSED without leave to amend.

\\

\\

15

### F

Plaintiffs' fraud and conspiracy allegations are also subject to dismissal without leave to amend.

### 1

"[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FRCP 9(b). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." <u>Moore v Kayport Package Express, Inc</u>, 885 F2d 531, 540 (9th Cir 1989).

In their initial complaint, plaintiffs merely allege that Sheikh "conspired with the county of Monterey and [] Nicora to defraud [] Rose and split the money with [] Nicora." Doc #1 at 16. The broad conclusory statement that Sheikh "conspired to defraud" fails to provide sufficient detail of the alleged fraudulent activity. Plaintiffs' opposition papers add nothing to the original complaint, and consist solely of a reiteration of their previous allegations. For these reasons, plaintiffs' allegations fail to state a claim for fraud.

### 2

In order to state a claim for the tort of civil conspiracy, plaintiff must show (1) "the formation and operation of the conspiracy," (2) "the wrongful act or acts done pursuant thereto" and (3) "the damage resulting." <u>Duncan v Stuetzle</u>, 76 F 3d 1480, 1490 (9th Cir 1996).

Plaintiffs' complaint alleges the existence of a conspiracy to commit fraud between Sheikh, the county of Monterey and Nicora. Doc #1 p 16. Plaintiffs' opposition to Sheikh's

16

motion to dismiss goes on to include the Victorian, Ordway Pharmacy and "others" as part of the alleged conspiracy.  Doc #38 p 5. While plaintiffs compose an impressive list of alleged co-conspirators, the essential allegations regarding when the conspiracy was formed, how it was formed or what acts were committed pursuant to the conspiracy are absent.  Accordingly, plaintiffs fail to plead facts sufficient to withstand Sheikh's motion to dismiss.

## VII

Rule 7.9(b) of the Civil Local Rules provides that, in order to obtain leave to file a motion for reconsideration of a pre-judgment order of the court, a party must show:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order * * * [and] in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order.
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

In addition, Rule 7.9(c) prohibits parties from repeating "any oral or written argument" previously made in connection with the motion; violation of this prohibition subjects the party to sanctions.

Careful review of the twenty-three pages of papers plaintiffs have submitted in support of their motion to file a motion for reconsideration reveals nothing that falls into any of

17

the above three categories.  Rather, their submission consists of a re-hash of many of the arguments made in their complaint and in their opposition to the motions to dismiss.  Because plaintiffs are proceeding pro se, the court declines to sanction plaintiffs for this first violation of Rule 7.9(c).  Plaintiffs, however, are advised that any future violation of this rule will result in appropriate sanctions.

The motion to file a motion for reconsideration is DENIED.

## VIII

For the reasons stated above:

(1) the court DENIES plaintiffs' motion to strike;

(2) plaintiffs' intentional infliction of emotional distress, fraud, conspiracy and breach of duty claims are DISMISSED WITHOUT LEAVE TO AMEND; plaintiffs' medical malpractice and defamation claims are DISMISSED WITH LEAVE TO AMEND within thirty days of the date of this order as specified herein; and

(3) the court DENIES plaintiffs' motion for leave to file a motion for reconsideration.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge